

**FILED**

November 22, 2021 08:57 AM
ST-2020-CR-00046
**TAMARA CHARLES**
**CLERK OF THE COURT**

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN
****************

| | | |
|---|---|---|
| PEOPLE OF THE VIRGIN ISLANDS, | ) | CASE NO. ST-2020-CR-00046 |
| | ) | |
| Plaintiff, | ) | 14 V.I.C. §§ 1861, 1862(2) & 11(a) |
| vs. | ) | 14 V.I.C. §§ 2253(a) & 11(a) (4 counts) |
| | ) | 14 V.I.C. §§ 1861, 1863(1) |
| KY'MANI DOLPHIN, | ) | 14 V.I.C. §§ 295(3) & 11(a) |
| | ) | 14 V.I.C. §§ 1083(a)(1) & 11(a) |
| Defendant. | ) | 14 V.I.C. § 551(1) |

Cite as VI Super 116U

### MEMORANDUM OPINION AND ORDER

¶1    **THIS MATTER** is before the Court on:

1.   Defendant's Motion To Suppress And Motion For Hearing ("Motion To Suppress"), filed April 30, 2021;

2.   People's Response And Opposition To Defendant's Motion To Suppress Pretrial And In-Court Identification And Defendant's Motion For Hearing ("Opposition"), filed September 1, 2021; and

3.   Defendant's Reply To The People's Response And Opposition To Defendant's Motion To Suppress Pretrial and In-Court Identification And Defendant's Motion For Hearing, filed October 1, 2021.

¶2    The Court will not suppress the out-of-court or in-court identification of Dolphin by the victim as the procedure used by the Virgin Islands Police Department ("VIPD") was not unnecessarily suggestive.

### I.    INTRODUCTION

¶3    On May 5, 2019, the victim in this case was approached in a park at night by an individual who put a gun to the victim's head and demanded his belongings while another individual removed from the victim his jewelry, money, and cellphone.[1] The victim stated that the lighting was poor,[2] while the police testified that additional lighting had been set up at the park because of Carnival.[3] The victim described the assailant who held the gun as "short, fat, dark skinned with a short afro," he gave the victim's approximate age, he identified the clothing worn by the assailant, he indicated that he had seen one of the assailants, the one he later identified as the Defendant Ky'Mani Dolphin

---

[1] Probable Cause Fact Sheet 1.
[2] Def.'s Mot. To Dismiss 2.
[3] October 7, 2021 Suppression Hearing.

("Dolphin"), previously at the 2019 UVI Queen show, and finally the victim provided police with that assailant's "streetname," which was "Fathead." On August 21, 2019, VIPD conducted an eyewitness identification with the victim at the police station where the victim selected the Dolphin from a binder of photos of juvenile defendants.[4]

¶4    On October 7, 2021, the Court held a suppression hearing. At the hearing, VIPD Crime Scene Technician Debra Mahoney ("Mahoney") testified that, while the Investigations Bureau of the VIPD has a procedure book, there is not a procedure book for the Forensic Unit which details the procedure VIPD uses in an eyewitness photo identification. Rather, Mahoney stated that the investigating officers brought the victim to her in an Investigations Bureau room, about the size of a large office, with multiple desks in it. Mahoney testified she is given the suspect's name, then she goes and gets the corresponding photobook that has the suspect in it. She knew to get the juvenile photobook because Detective Cherese Thomas ("Thomas") investigates juvenile cases, and there is only one juvenile photobook because when juvenile defendants turn eighteen (18), VIPD takes their photo out of the book. Mahoney stated she did not know the victim personally.

¶5    Mahoney then testified she began the identification process, which consisted of her first filling out a photo array sheet where she puts information such as her name, the victim's name, the case agent's name, what photobook will be used, the date of the incident, the alleged crime, and eventually the page and slot number of the photo that the victim picked. Mahoney testified that VIPD does not record audio or video of the identification process and she does not write a report afterwards. Mahoney testified that the only speaking interaction she had with the victim prior to the identification was to ask him his name for the sheet and to explain the photo viewing process to him. Mahoney testified she instructed the victim to pick out the assailant, that he has to be one hundred percent (100%) sure it is the assailant and not a look alike or that he "just thinks it is" the assailant.

¶6    The photobook is given to the victim closed, there are more than fifty (50) pages in the book, with each page consisting of four (4) photos slid into a plastic sleeve unless the photo has been removed.[5] The photos are all juvenile defendants. Pictures are not sorted alphabetically, no one is picked to look like anyone nor are the pictures arranged by hairstyle or any other means, but rather they are arranged randomly. If anyone were to look at the photobook now it would look different than it did on the date of the viewing, as Mahoney has already removed Dolphin's photo and no copy or other record of how the page looked on the day of the identification is kept.

¶7    Mahoney further testified that on the back of each photo is an association number that corresponds to a log entry with more information about individual in the photo, as well as Mahoney's initials and the date the photo was taken. Mahoney was seated about six (6) feet away and did not otherwise interact with the victim except to ask if he was one hundred percent (100%) sure the selected photo was of his assailant. The victim did confirm he was one hundred percent

---

[4] October 7, 2021 Suppression Hearing.
[5] Despite being ordered in the subpoena to bring the photobook, Mahoney did not bring the juvenile photobook to the hearing. The Court ordered that the defense and the People should be given a chance to see and review the book at the police station if counsel for Dolphin so chooses and ordered that the book be made available to Dolphin's counsel for viewing within a couple weeks of the suppression hearing.

(100%) sure the photo was of his assailant. Mahoney could not recall what the victim said when he identified the defendant in the photobook or how many pages he flipped through before identifying Dolphin. She did not ask if there was a prior identification or inability to make a prior identification. The detectives were not in the room during the identification process.

¶8     Next, Thomas took the stand and testified that she just takes the victim to the Forensic Unit for the identification process, and she did so here because when Dolphin was arrested he was a minor, but he no longer is. Thomas testified she told Mahoney that they needed to do an identification because there was a victim who was robbed in the park and they needed to use the juvenile photobook because the victim gave his assailants' approximate ages as sixteen (16) and seventeen (17). Thomas stated that the victim was able to pull out a photo for one of his assailants, and he referred to the person as "Garner." Thomas then took an interview with the victim, which was not recorded on video, just on paper, and Thomas only instructed the victim beforehand to speak slowly.

¶9     Thomas then testified that the victim told her in an interview that some parts of the park were lit and some were dark, and he gave a physical description of his assailant as a short, black skinned person with an afro, noted he had seen him prior, and gave an approximate age. Thomas was shown the May 5, 2019 Offense Report (Defendant's Exhibit #3) and asked why no approximate age was checked, why "fat" on body build was not checked, why no hairstyle was checked, and why "short" was not checked on the height section. Additionally, Thomas was asked why under "solvability" 'suspect cannot be named' was checked when the victim provided a nickname. On redirect, Detective Thomas stated that the additional lighting put up in the park during Carnival does not cover every inch of the park.

¶10    Lastly, the victim was called to the stand. He testified that he did do a photo identification at the VIPD building, he stated there were more than ten (10) photos in the album he viewed, and that the photo on the photo album viewing form (Defendant's Exhibit #1) was indeed the photo he selected. After this testimony, Dolphin argued that VIPD does not have a modicum of set procedures for photo identification, the process was not blind as the detective and technician both knew who the suspect was, there was no follow-up as to the victim's level of confidence in the photo he selected, there was no explanation for the discrepancies between the officer's report the day of the crime and the identification interview months later, and that there is no independent basis for the identification. As a part of his evidence, Dolphin submitted as Defendant's Exhibit #6 the January 6, 2017 Memorandum from Sally Yates, then Deputy Attorney General at the Department of Justice, on procedures for conducting eyewitness identification photo arrays.

¶11    Therefore, Dolphin moves to suppress identifications made by the victim in this case, both at the police station and any potential ones that will be made in Court.[6] Dolphin argues that the photo array and procedure surrounding the victim selecting his photo was unduly suggestive and thus the out-of-court identification, as well as any made in-court later by the victim, must be

---

[6] Def.'s Mot. To Dismiss 1.

suppressed pursuant to the Fourteenth Amendment of the United States Constitution and Section Three of the Revised Organic Act of the Virgin Islands.[7]

## II.    <u>LEGAL STANDARD</u>

### A. Suppression of Photo Array Identification

¶12     The Fourteenth Amendment of the United States Constitution provides, in part, that "nor shall any State deprive any person of life, liberty, or property, without due process of law."[8] The United State Supreme Court has ruled that unnecessarily suggestive out-of-court identifications of the suspect may be unconstitutional and that "reliability is the linchpin in determining the admissibility of identification testimony."[9] Section Three of the Revised Organic Act of 1954 provides, in part, that "[n]o person shall be held to answer for a criminal offense without due process of law."[10]

¶13     The Virgin Islands Supreme Court in *Richards v. People*[11] surveyed the United States Supreme Court Due Process clause photo identification jurisprudence and established that "the appropriate analysis for determining whether an identification procedure created a substantial likelihood of misidentification . . . is two-fold."[12] The first part of the analysis is to "determine whether the identification procedure was unnecessarily suggestive," and if it is determined to be, then the Court must determine "whether the identification itself was nevertheless reliable."[13] The *Richards* Court, in summarizing the trilogy of United States Supreme Court cases on the issue, identified several factors courts should consider when considering whether an unnecessarily suggestive photo line-up creates a substantial likelihood of misidentification:

> [1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.[14]

---

[7] Def.'s Mot. To Dismiss 1.

[8] U.S. CONST. amend. XIV, § 1.

[9] *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *see also Neil v. Biggers*, 409 U.S. 188 (1972), *Stovall v. Denno*, 388 U.S. 293 (1967).

[10] Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 159-60 (1995 & Supp. 2013) (preceding V.I. CODE ANN. tit. 1).

[11] 53 V.I. 379 (V.I. 2010).

[12] *Id.* at 387.

[13] *Id.* (citing first *Garcia v. Gov't*, 48 V.I. 530, 536 (D.V.I. App. Div. 2006), then *United States v. Brownlee*, 454 F.3d 131 (3d Cir. 2006)).

[14] *Id.* at 386.

## III.    ANALYSIS

### A.  The identification procedure was not unnecessarily suggestive

¶14    As the Court finds that the procedure utilized by police here was not unnecessarily suggestive, the out-of-court identification of Dolphin will not be suppressed, nor will the in-court identification be suppressed. As a first point, the Court notes that the investigating officers were not present in the room during the identification except to lead the victim to the room. The Crime Scene Technician, Mahoney, had minimal contact with the victim, interacting with the victim only to bring him the book, explain the straight-forward procedure, and confirm he was sure of his selection. Mahoney did not give the book to the victim open to a specific page or stand over and direct the victim, rather she testified she presented the book closed, sat some distance away, and did not otherwise look at the victim.

¶15    Further, while courts have found that presenting the victim with a single photo may or may not be considered unduly suggestive depending on the circumstances,[15] that was not even remotely the case here. The victim here was presented with the entire photobook of juvenile defendants, of which there is only one. While there may be concerns where a photo array consists of only a few photos, and only one photo matches a standout trait of a suspect that the victim has previously identified (such as the existence of facial hair or a noteworthy scar), when the photo is one out of scores, such concerns are alleviated as the photo is just one embedded in a sea of random faces. There was evidence presented that the book consisted of over fifty (50) pages with four (4) photos a page. Even considering some photos on some pages may have been removed, as Mahoney testified was office procedure once a defendant reaches age of majority, such a large number of photos serves to obfuscate, not suggest, the defendant. Additionally, trying to replicate Dolphin's features across several different photos in such a procedure would effectively achieve the opposite of the desired result as it would make that group of photos stand out from the otherwise nondescript mass. Lastly, all photos were those of juveniles.

¶16    The Court acknowledges Dolphin's argument that VIPD lacks a written set of standard procedures for conducting photo identifications, and certainly the procedure here does not adhere to the best practices outlined by Deputy Attorney General Sally Yates.[16] While the development of, and adherence to, a written standard procedure for eyewitness photo identifications that hews closely to the procedures in the United States Department of Justice memorandum may go a long way to assuaging defense counsels that there was no undue suggestiveness by the VIPD, and may save VIPD and the People time and resources from having to appear in Court to justify their procedures, the lack of a written guide does not make a procedure unduly suggestive. Under the totality of the circumstances here, the Court finds that asking the victim to look through a large

---

[15] *Tate v. Hasara*, No. 14-4609, 2017 U.S. Dist. LEXIS 191941, at *7-8 (E.D. Pa. Nov. 16, 2017) (finding that "having Brooks view a single photo of Tate—was unduly suggestive and led to an unreliable identification"); *cf., Burgos-Cintron v. Nyekan*, No. 09-4470, 2011 U.S. Dist. LEXIS 108486 (D.N.J. Sept. 19, 2011) (*aff'd*, 510 F. App'x 157 (3d Cir. 2013)) (finding a single photo identification to not be unduly suggestive when the assailant was previously known to the victim).

[16] Def.'s Ex. 6 (Jan. 6, 2017 Memorandum on Eyewitness Identification: Procedures for Conducting Photo Arrays).

collection of essentially random juvenile faces and asking the victim to select one only when he or she is one hundred percent (100%) sure, without any outside influence by officers or others, is not unnecessarily suggestive. Thus, the Court need not consider whether the photo identification was "otherwise reliable."

¶17     While Dolphin additionally argues that under *Balboni v. Ranger Am. of the V.I., Inc.*,[17] the Virgin Islands Supreme Court has found that the Virgin Islands Supreme Court may interpret the Virgin Islands Bill of Rights to grant more protections than the United States Bill of Rights, and he argues that the Court should do so here, Dolphin cites no precedent which binds this Court to find that the Due Process clause of the Revised Organic Act of 1954 requires greater protection for defendants than those already laid out in *Richards*. Absent guidance from the Virgin Islands Supreme Court, the Court declines to adopt a different test or greater protections for defendants here than those which have already been established by the Virgin Islands Supreme Court in *Richards*.

¶18     Finally, while the Court will not suppress the identification of Dolphin by the victim, nothing in this Memorandum Opinion and Order precludes Dolphin from attacking the reliability of that identification or the credibility of a witness on either direct or cross-examination for any of the reasons Dolphin has argued hitherto.

## IV.     CONCLUSION

¶19     On May 5, 2019, a man was assaulted and robbed in a park by two (2) individuals. On August 21, 2019, the victim identified Defendant Ky'Mani Dolphin as his assailant during a photo identification at VIPD headquarters. The victim was given a photobook with over fifty (50) pages consisting of four (4) photos per page and told to select his assailant only if he was one hundred percent (100%) sure. The victim selected a photo of Dolphin and subsequently Dolphin was charged with the assault and robbery.

¶20     On April 30, 2021, Dolphin moved to suppress the out-of-court identification of the victim and any subsequent in-court identifications on the grounds that the procedures used by VIPD violate the Due Process clauses of the United States Constitution and the Revised Organic Act of 1954. After holding a hearing on October 7, 2021, in which witnesses gave testimony and both sides presented evidence, and in consideration of all the circumstances, the Court finds that the procedure used by VIPD here was not unnecessarily suggestive. Thus, the Court will not suppress the identifications.

¶21     Accordingly, it is hereby

**ORDERED** that Defendant's Motion To Suppress And Motion For, filed April 30, 2021, is **DENIED**; and it is further

---

[17] 2019 VI 17.

**ORDERED** that a copy of this Memorandum Opinion and Order shall be directed to counsel of record.

DATED: November 22, 2021

_____
**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY: _____
**LATOYA CAMACHO**
Chief Deputy Clerk     11/23/2021